**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CHERYL A. BELL,

                               Plaintiff,

        - v -                                        No. 06-CV-865
                                                      (LEK/DRH)
MICHAEL J. ASTRUE, Commissioner of
Social Security,[1]

                               Defendant.

**APPEARANCES:**                        **OF COUNSEL:**

LEKKI HILL FISCHER & DUPREY, P.C.        NEIL TARAK BHATT, ESQ.
Attorney for Plaintiff
21 Court Street
Post Office Box 469
Canton, New York 13617

CONBOY, McKAY, BACHMAN &                 LAWRENCE D. HASSELER, ESQ.
    KENDALL, LLP
Attorney for Plaintiff[2]
407 Sherman Street
Watertown, New York 13601

HON. ANDREW T. BAXTER                    SANDRA GROSSFELD, ESQ.
United States Attorney for the           Special Assistant U.S. Attorney
    Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**United States Magistrate Judge**

———————————————

        [1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007.
Pursuant to Fed. R. Civ. P. 25(d)(1), Astrue is substituted as the defendant for his
predecessor, Jo Anne B. Barnhart.

        [2]The complaint was filed on July 17, 2006 by Neil Tarak Bhatt, Esq. of the Lekki law
firm.  Docket No. 1.  Plaintiff's brief was filed on November 3, 2006 by Lawrence D.
Hasseler, Esq. of the Conboy law firm.  Docket No. 6. No substitution of counsel has ever
been filed.  Accordingly, it appears that plaintiff is represented by both law firms and the
Clerk is directed to amend the docket of this action to reflect such joint representation.

**REPORT-RECOMMENDATION and ORDER**[3]

Plaintiff Cheryl A. Bell ("Bell") brought this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("Commissioner")

denying her application for benefits under the Social Security Act.  Bell moves for a finding

of disability and the Commissioner cross-moves for a judgment on the pleadings.  Docket

Nos. 6, 12.  For the reasons which follow, it is recommended that the Commissioner's

decision be remanded for further proceedings.


## I.  Procedural History

On August 18, 2004, Bell filed for disability insurance benefits pursuant to the

Social Security Act, 42 U.S.C. § 401 et seq.  T. 58-60.[4]  The application was initially

denied.  T. 33-37.  Bell requested a hearing before an administrative law judge ("ALJ"),

which was held before ALJ Elizabeth W. Koennecke on May 31, 2005.  T. 41, 245-64.  In

a decision dated October 25, 2005, the ALJ held that Bell was not entitled to disability

benefits.  T. 24-31.  Bell filed a request for review with the Appeals Council.  T. 14-17.  On

May 12, 2006, the Appeals Council denied Bell's request, thus making the ALJ's findings

the final decision of the Commissioner.  T. 6-9.  This action followed.

---

[3]The matter was referred to the undersigned for Report and Recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

[4]"T." followed by a number refers to the pages of the administrative transcript filed
by the Commissioner.  Docket No. 4.

## II.  Contentions

Bell contends that the ALJ erred when she failed properly to (1) assess the severity of her back condition and fibromyalgia,[5] (2) apply the treating physician's rule, (3) determine her residual functional capacity (RFC), and (4) evaluate her subjective complaints of pain.  The Commissioner contends that there was substantial evidence to support the determination that Bell was not disabled.

## III.  Facts

Bell, now forty-five, received a General Educational Development ("GED") diploma. T. 58, 70.  Bell previously worked as a home health aide.  T. 66.  Bell alleges that she became disabled on May 10, 2004 due to kidney disease, a back injury, arthritis in her hip, and fibromyalgia.  T. 65; Docket No. 6 at 12-14.

## IV.  Standard of Review

### A.  Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical

---

[5]Fibromyalgia is

a common nonarticular rheumatic syndrome characterized by myalgia and multiple points of focal muscle tenderness to palpation (trigger points). Muscle pain is typically aggravated by inactivity or exposure to cold.  This condition is often associated with general symptoms, such as sleep disturbances, fatigue, stiffness, [headaches], and occasionally [depression].

Medical Dictionary Online (visited May 13, 2008), <http://www.online-medicaldictionary. org/omd. asp?q=fibromyalgia>.

*-3-*

or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§

423(d)(1)(A) & 1382c(a)(3)(A) (2003). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that
> he [or she] is not only unable to do his [or her] previous work but cannot,
> considering his [or her] age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate area in which he [or
> she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] w

*Id.* at §§ 423(d)(2)(A) & 1382c(a)(3)(B) (2003).

The Commissioner uses a five step process, set forth in 20 C.F.R. §§ 404.1520 &

416.920, to evaluate disability insurance benefits and SSI claims:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If he [or she] is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his [or her] physical or mental ability to
> do basic work activities. If the claimant suffers such an impairment, the third
> inquiry is whether, based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations. If the claimant
> has such an impairment, the [Commissioner] will consider him [or her]
> disabled without considering vocational factors such as age, education, and
> work experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial gainful
> activity. Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he [or she] has
> the residual functional capacity to perform his [or her] past work. Finally, if
> the claimant is unable to perform his [or her] past work, the [Commissioner]
> then determines whether there is other work which the claimant could
> perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520 &

416.920 (2003).

A plaintiff has the burden of establishing disability at the first four steps. Shaw v.

Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an

impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform.  Id.

## B.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Shaw, 221 F.3d at 131 (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V.  Discussion

### A.  Medical Evidence

On February 26, 2001, Bell was examined by Dr. Shiv Kumar.  T. 104-06.  He found that she had tenderness in the joints of her hands and multiple cysts in both kidneys and liver.  T. 105.  Dr. Kumar diagnosed her with possible autosomal dominant adult polycystic kidney disease but noted that she did not need any further diagnostic testing or therapy at that time.  Id.  In August 2001 and March 2002, Dr. Kumar found that her polycystic kidney disease was stable.  T. 107-08.  On July 29, 2002, Bell complained of bilateral flank pains.  T. 109.  Dr. Kumar found that the pain could relate to a cyst rupture and he prescribed Ultracet.  Id.

In February 2003, Dr. Kumar reported that Bell's kidney disease was stable and there was no overt clinical worsening of her renal insufficiency.  T. 110.  He also stated that consideration was being given for a possible diagnosis of fibromyalgia.  Id.  In January 2004, Dr. Kumar noted that Bell had ruptured an ovarian cyst and that several other cysts were present in her liver and kidneys.  T. 112, 137, 141-43.  He suggested that Bell have an ultrasound and follow-up in three months.  T. 112-13.  A CT-scan taken in March 2004 revealed a complex cyst accompanied by a fleck of calcium density in the wall of the upper right kidney and benign cysts in the liver.  T. 139-40, 144.

On May 11, 2004, Dr. Daniel Palmateer examined Bell for complaints of neck and lower back pain she experienced after lifting one of her patients while at work.  T. 149.  It was noted that Bell had palpable spasms in the right trapezius and paraspinal muscles, range of motion was limited in the cervical and lumbar spine secondary to discomfort,

straight-leg raising caused a pulling sensation but no pain, muscle strength in the lower extremities was 5/5 and equal, and she ambulated gingerly but not ataxically.  Id.  On May 13, 2004, Dr. Jeffrey M. Rimmer evaluated Bell for her polycystic kidney disease.  T. 155-56.  He confirmed that she had the disease, stated that he would check her kidney function, and told her to return in two months.  T. 156.  On May 24, 2004, Bell returned to Dr. Palmateer for her neck and back pain.  T. 149.  He noted that Bell moved gingerly from the chair to the table, she had spasms in her lower thorax and lumbar area, and straight-leg raising was weak.  Id.  He diagnosed chronic lower back pain, stated she could not return to work, and recommended physical therapy, which she began that day.[6]  T. 150, 163-65.  In June 2004, as a follow-up for Bell's Workers' Compensation claim, Dr. Palmateer stated that Bell had good forward, side, and back flexion, good strength, normal deep tendon reflexes, and only mild tenderness on her right side.  T. 150.  He noted that she could return to work without limitation, although he suggested she look for another line of work.  Id.

In July 2004, Bell re-aggravated her back after returning to work.  T. 151.  Dr. Palmateer found her to be disabled and told her to rest at home.  Id.  The same month, Bell was evaluated by Dr. Christopher V. Horn.  T. 180.  He found that she had no range of motion with spasm, no neurological abnormality of the legs, no motor weakness or sensory change, preserved reflexes, and limited straight-leg raising.  Id.  An x-ray taken of her lumbosacral spine was negative, but Dr. Horn diagnosed a herniated lumbar disk.  T. 180-81.

---

[6]Bell attended physical therapy from May 24, 2004 until August 5, 2004.  T. 163-76. Until her discharge in August, it was noted that Bell was progressing with her therapy.  Id.

In September 2004, Dr. Palmateer stated that Bell suffered from chronic back and neck pain principally of the trapezius muscle, cervical spine, mid-thoracic and lower spine, and high and low lumbar area.  T. 151-52.  The same month, Dr. Rimmer stated that Bell should undergo another CT-scan or ultrasound to determine whether she had large cysts developing in her liver.  T. 157.  Bell also underwent an independent medical examination with Dr. Kevin Scott in September 2004 for her Workers' Compensation claim.  T. 187-90. Dr. Scott reported that Bell had limited flexion and extension of the lumbar spine, pain with lateral bending, negative straight-leg raising bilaterally, good range of motion of her hips, and no tenderness over her greater trochanters.  T. 188-89.  He diagnosed her with chronic low back pain with facet joint arthritis and concluded that she was moderately and partially disabled.[7]  T. 189.

On October 13, 2004, Dr. William Kimball, a state agency consultant, conducted a mental examination of Bell.  T. 182-86.  He noted that Bell drove thirty-five miles by herself to the examination.  T. 182.  During the mental examination, Dr. Kimball found that Bell's speech and content were relevant and appropriate; there were no signs of delusions or hallucinations; she was preoccupied with her physical pain; affect was positive; she had trouble sleeping; concentration, attention, and insight were good; and judgment was very good.  T. 184-85.  He diagnosed Bell with depressive disorder and opined that her depression was minor.  T. 186.  Dr. Kimball further determined a Global Assessment of

_____

[7]Disability standards under the Act differ significantly from those applicable under various states' Workers' Compensation laws.  Crowe v. Comm'r of Soc. Sec., No. 01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (citing Gray v. Chater, 903 F. Supp. 293, 301 n.8 (N.D.N.Y. 1995) ("Workers' [C]ompensation determinators are directed to the workers' prior employment and measure the ability to perform that employment rather than using the definition of disability in the Social Security Act.")).

Functioning ("GAF")[8] score of 68, which indicated the existence of mild symptoms or difficulty in social, occupational, or school functioning but generally meant that the individual was functioning well and had meaningful interpersonal relationships.[9]  Id.

On October 22, 2004, Bell was consultatively examined by Dr. Shara Peets.  T. 191-92.  Dr. Peets found that Bell had lumbar stiffness on ambulation, heel and toe standing were normal, squat was unsteady upon standing, range of motion of the cervical and thoracic spine were normal, and forward lumbar flexion was limited.  T. 191.  Dr. Peets noted that Bell claimed exacerbation of her pain after lifting, bending, and sitting more than a half-hour without changing positions and exposure to cold and damp conditions but that she was not limited in her ability to stand or walk and had no difficulty with manual dexterity or sensory limitations.  T. 192.[10]

On November 3, 2004, Dr. Palmateer found that Bell was alert, tearful, and in no acute distress.  T. 217.  He stated that Bell ambulated with difficulty; there was tenderness to percussion in the upper and lower spine; reflexes, strength, and sensation were normal; and deep tendon reflexes were preserved.  Id.  On November 4, 2004, a state agency disability analyst evaluated Bell's physical RFC and found that she could lift up to twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour day, stand and walk for six hours in an eight-hour day, and occasionally perform postural

---

[8]The GAF scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV-TR").

[9]See DSM-IV-TR 34.

[10]In October 2004, Bell also received a facet joint injection from Dr. Horn.  T. 240.

activities.  T. 194-95.

The same day, state agency medical consultant Dr. Terri L. Bruni completed a

Psychiatric Review Technique form.  T. 199-212.  Dr. Bruni found that a medically

determinable impairment existed that did not fit the diagnostic criteria, or depressive

disorder.  T. 202.  Dr. Bruni concluded that Bell had slight restrictions on activities of daily

living and difficulty in maintaining social relationships as well as moderate deficiencies in

maintaining concentration, persistence, and or pace.  T. 209.  On the same occasion, Dr.

Bruni completed a mental RFC assessment.  T. 213-15.  Dr. Bruni examined twenty

categories of mental functioning and of those, Dr. Bruni found that Bell had moderate

limitations in only one category, the ability to complete a normal workday and workweek

without interruptions from psychologically based symptoms and to perform at a consistent

pace without an unreasonable number and length of rest periods.  Id.  Dr. Bruni concluded

that Bell was not significantly limited in any other categories.  Id.

In December 2004, Dr. Kumar found that Bell had tenderness over her right

subcostal area and that she was experiencing normal kidney functions.  T. 218.  The same

month, Dr. Horn stated that Bell's range of motion of her lower back was decreased, she

had sensitivity to touch over the right buttock, there was no obvious neurological

abnormality, and she was limping on her right side.  T. 239.  He noted that an x-ray of the

pelvis, hips, and SI joint showed no abnormalities.  Id.

In January 2005, Dr. Palmateer found that Bell had tenderness in the trapezius

muscles on both sides, tenderness in the paravertebral muscles in the lower back, and

tenderness with straight-leg raising on the right.  T. 221.  He diagnosed her with

fibromyalgia[11] and depression, prescribed Zoloft and Trazodone, and concluded that Bell was disabled.  T. 221-23.  In March 2005, Dr. Kumar stated that a work-up had been done for possible fibromyalgia because she experienced pain all over.  T. 233.  He stated that she was unable to climb stairs but had no difficulty getting out of a chair.  Id.  He diagnosed her with kidney disease and fibromyalgia with possible polymyalgia rheumatica. Id.  In April 2005, Dr. Palmateer stated that Bell's forward, back, and side flexion was limited as was rotation, distal extremities were of full strength but limited with exertion, and deep tendon reflexes and somatosensory examinations were normal.  T. 224.  He opined that Bell was disabled from work.  Id.

In May 2005, Dr. Palmateer completed a medical source statement on Bell's ability to do work-related activities.  T. 236-37.  He opined that she could occasionally and frequently lift and carry less than ten pounds and stand, sit, and walk for less than two hours in an eight-hour workday.  T. 236.  Dr. Palmateer stated that Bell needed to lie down for less than two hours in an eight-hour workday and shift at will between standing, sitting, and walking.  Id.  He further reported that Bell could rarely twist, stoop, crouch, climb stairs, or climb ladders; she would have difficulty reaching, handling, fingering, feeling, pushing, and pulling; and she would be absent from work more than three times per month.  T. 237.  Dr. Palmateer also stated that Bell's pain would be distracting to her daily activities and work, physical activity would greatly increase her pain and cause her to abandon her daily activities or work, and her medication would create limitations in her ability to work but they would not create serious work difficulties.  T. 238.

---

[11]This diagnosis was also relayed to the Workers' Compensation board by Dr. Palmanteer in December 2004.  T. 220.

**B.  Severity of Impairments**

Bell contends that the ALJ failed properly to assess the severity of her back injury and fibromyalgia.  The Commissioner contends that the ALJ properly evaluated the severity of Bell's impairments.

As mentioned above, step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities.  See subsection IV(A) supra.  The ability to do basic work activities is defined as "the abilities and activities necessary to do most jobs."  20 C.F.R. § 404.1521(b) (2005).  Basic work activities which are relevant for evaluating the severity of an impairment include:

> (1) Physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b) (2005); see Pickering v. Chater, 951 F. Supp. 418, 424 (S.D.N.Y.1996); see also Social Security Ruling 85-28, 1985 WL 56856, at *3-4, Titles II and XVI: Medical Impairments That Are Not Severe (S.S.A. 1985).

Age, education, and work experience are not evaluated in determining if the impairment or combination of impairments are severe.  20 C.F.R. § 404.1520(c) (2005).  The severity analysis does no more than "screen out de minimis claims."  Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).  If the disability claim rises above the de minimis level, then further analysis is warranted.  Id.  Where a claimant alleges multiple impairments, the

combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity.  20 C.F.R. § 404.1523 (2005); Dixon, 54 F.3d at 1031.

While the ALJ here concluded that Bell's facet joint arthritis and polycystic kidney disease were severe impairments, she found that Bell's depression and back pain were not severe.[12]  T. 26.  The ALJ found that Bell's claimed back pain was not supported by x-ray or Magnetic Resonance Imaging ("MRI") evidence.  T. 27.  The fibromyalgia was not addressed.

There is no question that Bell suffered back pain as all her treating physicians noted muscle spasms, tenderness, slowed gait, and more deliberate transitions.  T. 149-51, 180, 188, 191, 221.  There is also evidence in the record delineating Bell's inconsistent improvements in her back pain and range of motion.  T.  149-51, 180, 224.  This arguably constitutes substantial evidence of a severe impairment. Nevertheless, the ALJ's decision that Bell's lower back pain was not severe is also supported by substantial evidence as described in the decision.  See Battle v. Shalala, No. 94-CV-2488 (RWS), 1995 WL 312525, at *6 (S.D.N.Y. May 23, 1995) ("If there is substantial evidence supporting the Secretary's determination, the Secretary's decision must be upheld, even if the same body of evidence adequately supports [plaintiff's] position." (citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)).

Bell was diagnosed with disc herniations and spondylolysis and underwent two sets of x-rays and an MRI.  T. 181, 189, 26, 239, 27, 180, 262-63.  All of these diagnostic tests

_____

[12]Bell does not challenge the ALJ's finding regarding her depression.  See Docket No. 6 at 12-14.

showed unremarkable results as her spinal position and alignment were normal, there were no signs of disc herniations, and there were no other visible abnormalities.  T. 181, 189, 239.  Additionally, while physicians' treatment notes indicate that Bell was suffering discomfort, they also note that she could rise from a chair, mount and dismount the examination table, and heel and toe stand without assistance.  T.188, 191. Moreover, Bell's own testimony indicates that, while she had trouble with sitting and standing for prolonged periods of time, she was able to perform these activities, she could walk and drive, she did housework and attended to her personal hygiene, and she did not use an assistive device despite it being recommended to her.  T. 254, 256, 258, 260-61.  Thus, the ALJ's decision that Bell's back pain was not severe is supported by substantial evidence.

Additionally, Bell contends that the ALJ should have taken into consideration her fibromyalgia.  However, as previously discussed, at step two it is the plaintiff's burden to establish that he or she suffers from a severe impairment.  In this case, there was no mention of Bell's fibromyalgia in her application for benefits, administrative transcript of the hearing, or letter seeking reconsideration of the ALJ's denial of benefits.  Additionally, despite these fatal omissions, the only hints of fibromyalgia in the record are two conclusory diagnoses which are unsupported by any type of medical evidence.  T. 220, 221.  Thus, Bell has not met her burden to establish that she had a severe medical impairment which the ALJ must have considered in determining her eligibility for benefits.

Accordingly, it is recommended that the Commissioner's findings on this ground be affirmed.

## C.  Treating Physician's Rule

Bell contends that the ALJ did not give proper weight to the opinions of Drs. Horn and Palmateer who found her to be disabled.  The Commissioner states that the ALJ properly determined the weight to be given to the treating sources.

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant.  Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991).  Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2) (2005); Shaw, 221 F.3d at 134.  Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(I) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors."  Schaal, 134 F.3d at 503.  If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given.  Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).  Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133-34; see 20 C.F.R. § 404.1527(e) (2005).

First, despite Bell's argument to the contrary, the ALJ was not obligated to give the opinions of Drs. Horn and Palmateer controlling weight as the decision whether a claimant is disabled is reserved for the Commissioner.  Snell, 177 F.3d at 134; 20 C.F.R. § 404.1527(e).

Second, the ALJ stated that Dr. Palmateer's medical source statement did not deserve controlling weight because he repeatedly found that Bell was not precluded from working but could find another line work, x-ray and MRI evidence did not support such extreme restrictions, and limitations regarding manipulation had no basis in the record and were contradicted by Bell herself.  T. 28.  As previously noted, Dr. Palmateer opined that Bell could occasionally and frequently lift and carry less than ten pounds and stand, sit, and walk for less than two hours in an eight-hour workday.  T. 236.  He stated that Bell would have to lie down for less than two hours in an eight-hour workday and shift at will between standing, sitting, and walking.  Id.  Dr. Palmateer also reported that Bell could rarely twist, stoop, crouch, climb stairs, and climb ladders, she would have difficulty reaching, handling, fingering, feeling, pushing, and pulling, and she would be absent from work more than three times per month.  T. 237.

Dr. Palmateer's RFC assessment is not entirely supported by substantial evidence in the record.  In June 2004, Dr. Palmateer stated that Bell had good forward, side, and back flexion, good strength, normal deep tendon reflexes, and only a little tenderness on her right side.  T. 150.  He noted that she could go back to work without limitation, although he suggested she look for another line of work.  Id.  In July 2004, Dr. Horn reported that Bell had no range of motion with spasm, no neurological abnormality of the legs, no motor weakness or sensory change, preserved reflexes, and limited straight-leg

-16-

raising.  T. 180.  An x-ray taken of her lumbosacral spine during that time was negative.

T. 180-81.  In September 2004, Dr. Scott found that Bell had limited flexion and extension

of the lumbar spine, pain with lateral bending, negative straight-leg raising bilaterally, good

range of motion of her hips, and no tenderness over her greater trochanters.  T. 188-89.

        In October 2004, Dr. Peets found that Bell had lumbar stiffness on ambulation, heel

and toe standing were normal, squat was unsteady upon standing, range of motion of the

cervical and thoracic spine were normal, and forward lumbar flexion was limited.  T. 191.

Bell reported to Dr. Peets that while she had increased pain after lifting, bending, and

sitting more than a half-hour without changing positions and exposure to cold and damp

conditions, she was not limited in her ability to stand or walk and had no problems with

manual dexterity or sensory limitations.  T. 192.  In November 2004, Dr. Palmateer found

that Bell was in no acute distress, she ambulated with difficulty, there was tenderness to

percussion in the upper and lower spine, reflexes, strength, and sensation were normal,

and deep tendon reflexes were preserved.  T. 217.  In December 2004, an x-ray of Bell's

pelvis, hips, and SI joint showed no abnormalities.  T.  239.

        This evidence corroborates the conclusion that Dr. Palmateer's opinion did not

deserve controlling weight as his restrictions were significantly more severe than

suggested by the medical record.  However, Dr. Palmateer was the only treating source to

provide a detailed assessment of Bell's ability to perform work-related activities.  Apart

from concluding that the opinion did not deserve controlling weight and that the functional

limitations were "grossly exaggerated," the ALJ failed to specify what weight was given to

the assessment – that is, whether it deserved great, some, little, or no weight.  Thus, the

ALJ did not properly assign weight to this opinion.  See Caserto v. Barnhart, 309 F. Supp.

2d 435, 444-45 (E.D.N.Y. 2004) (citing Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993)

for the proposition that "the ALJ is required to articulate the weight that is given to treating

doctor's conclusions").

Accordingly, it is recommended that the Commissioner's finding in this regard be

remanded.

### D.  RFC

Bell asserts that substantial evidence does not support the finding that she retained

the RFC to perform light work that existed in significant numbers in the national economy.

Bell also contends that the ALJ erroneously determined that she was capable of

performing other work in the economy and that the Medical Vocational Guidelines ("Grids")

directed a finding of not disabled.  The Commissioner argues that the ALJ properly

determined Bell's RFC and that jobs existed in the nation economy that she could perform.

RFC describes what a claimant is capable of doing despite his or her impairments

considering all relevant evidence, which consists of physical limitations, symptoms, and

other limitations which go beyond the symptoms.  Martone v. Apfel, 70 F. Supp. 2d 145,

150 (N.D.N.Y. 1999); see 20 C.F.R.  § 404.1545 (2005).  "RFC can only be established

when there is substantial evidence of each physical requirement listed in the regulations."

Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).  In assessing

RFC, the ALJ must make findings specifying what functions the claimant is capable of

performing, not simply making conclusory statements regarding a claimant's capabilities.

Martone, 70 F. Supp. 2d at 150.  RFC is then used to determine whether the claimant can

perform his or her past relevant work in the national economy.  New York v. Sullivan, 906

F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. § 404.1545 (2005).

Where, as here, a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing.  See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. § 404.1560(c) (2005).  "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country."  20 C.F.R. § 404.1566(a) (2005).  The ALJ may apply the Grids or consult a vocational expert.  See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2003). If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled.  Pratts v. Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).

The Grids do not provide the exclusive framework for making a disability determination if a claimant suffers from non-exertional impairments that "significantly limit the range of work permitted by exertional limitations." Id. at 39 (quoting Bapp v. Bowen, 802 F.2d 601, 604-05 (2d Cir. 1986) (citation omitted)).  Rather, the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform.  Bapp, 802 F.2d at 604-05.  Work capacity is "significantly diminished" if there is a loss of work capacity that narrows the possible range of work available and deprives the claimant of a meaningful employment opportunity.  Id. at 605. Non-exertional impairments include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching."  20 C.F.R. § 404.1569a(c)(1)(vi) (2005).  The applicability of the grids should

*-19-*

be considered on a case-by-case basis.  Bapp, 802 F.2d at 605.  However, the "mere

existence of a non-exertional impairment does not automatically require the production of

a vocational expert nor preclude reliance on the guidelines."  Id. at 603.

Here, the ALJ found that Bell was unable to perform her past relevant work as a

home health aide but retained the RFC to perform a full range of light work.  T. 28-29.

Light work is defined as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of
> objects weighing up to 10 pounds.  Even though the weight lifted may be
> very little, a job is in this category when it requires a good deal of walking or
> standing, or when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls.

20 C.F.R. § 416.967(b) (2005).

The ALJ used the Grids to determine that other work existed in the national

economy that Bell could perform.  The ALJ concluded that Bell could "lift or carry 20

pounds occasionally and 10 pounds frequently, stand or walk 6 hours in an 8-hour day

and sit 6 hours in an 8-hour day."  T. 28.  However, the ALJ failed to explain properly  how

she made this RFC determination.  See Pratts v . Chater, 94 F.3d 34, 39 (2d Cir. 1996)

(stating that "[r]emand is particularly appropriate where . . . we are unable to fathom the

ALJ's rationale in relation to the evidence in the record without further findings or clearer

explanation for the decision" (internal quotations and citations omitted)).

The only opinion to support the ALJ's RFC finding was rendered by the disability

analyst.  T. 194-95.  The ALJ gave the opinion little weight because "a disability analyst is

not considered to be an acceptable medical source under the Regulations."  Hopper v.

Comm'r of Soc. Sec., No. 06-CV-38 (LEK/DRH), 2008 WL 724228,, at *10 (N.D.N.Y. Mar,

17, 2008).  The sole remaining RFC assessment came from Dr. Palmateer, an opinion to

which the ALJ did not give controlling weight.  T. 27-28.  Therefore, the opinion of Dr. Palmateer was not authoritative in determining Bell's RFC.

The ALJ thus failed to discuss upon what evidence she relied, leaving a gap in the record.  While the evidence in the record suggests a finding that Bell's limitations were not as severe as delineated by Dr. Palmateer, these limitations could neither be confirmed nor refuted because the ALJ did not re-contact any of Bell's other treating sources to obtain the additional information needed to reach a determination.  20 C.F.R. § 416.912(e); see also Hopper, 2008 WL 724228, at *11 (holding that when there is "little to no evidence in the record to determine [a plaintiff's] RFC properly, the ALJ should at least have attempted to contact [the plaintiff's] treating physicians . . . .").  Furthermore, both the disability analyst and Dr. Palmateer discussed postural limitations suffered by Bell.  See T. 195, 237.  However, the ALJ neglected to address whether Bell suffered from any of these non-exertional limitations.  Because the record does not indicate that the ALJ attempted to fill these gaps, the case should be remanded on this issue for clarification of the RFC assessment because "the ALJ failed in his duty to develop the record properly . . . ." Hopper, 2008 WL 724228, at *11. The ALJ's failure to explain properly her RFC determination and, in turn, discuss whether any postural limitations existed further calls into question whether the use of the Grids was appropriate to determine disability here.

Accordingly, it is recommended that the Commissioner's determination in this regard also be remanded.

### E.  Subjective Complaints of Pain

Bell contends that the ALJ's decision not to credit fully her subjective complaints of disabling pain was in error.  The Commissioner asserts that the ALJ properly found that Bell's testimony was not entirely credible.

The basis for establishing disability includes subjective complaints of pain even where the pain is unsupported by clinical or medical findings provided that the underlying impairment can be "medically ascertained."  20 C.F.R. § 404.1529 (2005); see also Snell, 177 F.3d at 135.  A finding that a claimant suffered from disabling pain requires medical evidence of a condition that could reasonably produce such pain.  An ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be expected to be consistent with the medical and other evidence.  20 C.F.R. § 404.1529 (2005); Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Pain is a subjective concept  "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain.  Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).  "The ALJ must discuss his resolution of the claimant's credibility regarding pain in a narrative discussion that provides specific reasons for the weight that he assigned to the claimant's statements; he may not merely conclude that the claimant's statements are not credible."  Lewis v. Apfel, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment.  See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978); Lewis, 62 F. Supp. 2d at 653.  If there

is conflicting evidence about a claimant's pain where the degree of pain complained of is

not consistent with the impairment, the ALJ must make credibility findings.  <u>Donato v.</u>

<u>Sec'y of HHS</u>, 721 F.2d 414, 418-19 (2d Cir. 1983).  The ALJ must consider several

factors pursuant to 20 C.F.R. § 404.1529(c)(3):

> (I)  [The claimant's] daily activities;
>
> (ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3) (2005).

Here, the ALJ concluded that Bell's allegations of disabling symptoms and

limitations were not totally credible.  T. 28.  In support of her conclusion, the ALJ noted

that Bell testified that she could perform daily functions with help and that she did not

vacuum.  <u>Id.</u>  Further, the ALJ focused on the fact that Bell had applied for unemployment

compensation, essentially certifying that she was able to work, but later testified that in her

mind she thought she was not capable of working.  <u>Id.</u>  The ALJ also noted that Bell

testified that Dr. Horn placed restrictions on her ability to lift but no such medical records

existed and Dr. Kumar found that she had no difficulty rising from a chair despite having an inability to climb stairs.  Id.

While the ALJ discussed Bell's daily activities as well as certain medical evidence, she disregarded the remaining factors set forth in 20 C.F.R. § 404.1529(c)(3).  The record is replete with references to the prescription pain relief and injections Bell received, her referral to a pain management clinic, her inability to remain sitting or standing without changing positions, and her need to lie and sit during the day while applying heat to her lower back.  However, the ALJ failed to consider these factors.  Id.  Although an ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence, such is not the case here as the ALJ did not properly consider or discuss the relevant factors necessary for a credibility determination.  Murphy v. Barnhart, No. 00-CV- 9621(JSR)(FM), 2003 WL 470572, at 10-11 (S.D.N.Y. Jan. 21, 2003) (citations omitted).

Accordingly, the ALJ's findings are not entitled to deference and the Court recommends remand on this ground as well.


## VI.  Remand or Reversal

A reviewing court has the authority to reverse with or without remand. 42 U.S.C. §§ 405(g), 1383(c)(3) (2003).  Remand is appropriate where there are gaps in the record or further development of the evidence is needed.  Curry, 209 F.3d at 124.  Reversal is appropriate, however, where there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose.  Id.; see also Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).  Here, there exist substantial gaps in

the record and further development of the record is required.  Accordingly, it is
recommended that the decision of the Commissioner be remanded for further proceedings
rather than reversed.


## VII.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **REMANDED** for
further proceedings as described above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file
written objections to the foregoing report.  Such objections shall be filed with the Clerk of
the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL
PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing
Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.
72, 6(a), 6(e).

Date:  October 23, 2008                                     _David R. Homer_____
           Albany, New York

                                                           David R. Homer
                                                           U.S. Magistrate Judge